UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DONTAVIOUS WILEY,

                                    Plaintiff,                        9:23-CV-0575
                                                                      (GTS/ATB)
            v.

CARINGI, et al.,

                                    Defendants.

_____

APPEARANCES:

DONTAVIOUS WILEY
Plaintiff, pro se
08-B-1009
Five Points Correctional Facility
Caller Box 119
Romulus, NY 14541

GLENN T. SUDDABY
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        On May 11, 2023, pro se plaintiff Dontavious Wiley ("plaintiff") commenced this action

by submitting a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") with an application

to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP"

Application).  On May 25, 2023, plaintiff filed an amended complaint, which became the

operative pleading.  Dkt. No. 5 ("Am. Compl."). The amended complaint contained

allegations of wrongdoing that occurred, if at all, while plaintiff was in the custody of the New

York State Department of Corrections and Community Supervision ("DOCCS") at Great

Meadow Correctional Facility ("Great Meadow C.F.").  *See generally* Am. Compl.

By Decision and Order filed on June 14, 2023 (the "June Order"), this Court granted plaintiff's IFP Application and reviewed the sufficiency of the amended complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1).  Dkt. No. 7.  The Court dismissed all claims, without prejudice, for failure to state a cause of action.  *Id*.  In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *Id*.

Plaintiff's second amended complaint is now before the Court for review.  Dkt. No. 13 ("Sec. Am. Compl.").

## II.    SUFFICIENCY OF SECOND AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the June Order and it will not be restated in this Decision and Order.  *See* Dkt. No. 7 at 2-4.

### B.  Summary of Second Amended Complaint[1]

With the amended pleading, plaintiff adds the following defendants: Acting Commissioner Anthony J. Annucci ("Annucci") and Deputy Commissioner for Corrections Joseph H. Noeth ("Noeth").[2]  *See generally* Am. Compl.  The second amended complaint

---

[1]  The second amended complaint includes exhibits.  *See* Dkt. No. 13 at 26-51.  To the extent that the exhibits are relevant to the incidents described in the second amended complaint, the Court will consider the documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[2]  The Clerk of the Court is directed to add these individuals to the docket report as defendants herein.

does not include claims against defendant Edir Thompson ("Thompson").[3]  *See id.*

The factual allegations and the claims for relief asserted in the second amended complaint are substantially the same as those in the amended complaint.  *Compare* Am. Compl. *with* Sec. Am. Compl.

On May 27, 2021, plaintiff received a misbehavior report charging him with lewd conduct, harassment, interference with an employee, creating a disturbance.  Sec. Am. Compl. at 27.  The issuing officer claimed plaintiff masturbated during class and threatened her.  *Id*.

At approximately 10:25 a.m., defendants Annucci, Noeth, Deputy Superintendent of Security Caringi ("Caringi"), and Sergeant Velie ("Velie") issued an order directing staff to place plaintiff in a lewd exposure jumpsuit and to install a cell shield.  Sec. Am. Compl. at 14, 16, 21, 22.  The jumpsuit had "12 strings on the back tied with a masterlock at its neck area" which "cut[ ] off air circulation making it difficult for [plaintiff] to breath [sic]."  *Id*.  Plaintiff was required to wear the jumpsuit as he walked around the facility.  *Id*. at 14, 16, 21, 22, 29.  The order was implemented prior to the completion of plaintiff's disciplinary hearing. Sec. Am. Compl. at 14, 16, 21, 22, 29.  Plaintiff was compelled to wear the "exposer suit" for thirty days and the cell shield was in place for approximately three weeks.  *Id*. at 28-30.

DOCCS' Directive #4939, entitled "Incarcerated Individual Exposure Control" provides, in pertinent part:

> Incarcerated individuals who engage in lewd conduct shall be provided an "Incarcerated Individual Exposure Control - One Time Warning" Form #4938B, by a Security Supervisor, explaining that further conduct of this nature may result in the

---

[3]  The Clerk of the Court is directed to terminate Thompson from the docket report.

Incarcerated Individual being placed on an Exposer Shield and Exposer Placard Order and/or Exposer Control Suit Order. The original completed Form #4938B will be forwarded to the Disciplinary Office as part of the hearing packet, one copy will be retained in the incarcerated individual's Guidance folder and one copy to the incarcerated individual.

Sec. Am. Compl. at 15, 16, 17, 46-47.  Plaintiff alleges that Directive #4939 does not permit an exposer suit, sign, or shield to be utilized prior to the completion of a disciplinary hearing. *Id*. at 23.

Construing the second amended complaint liberally, plaintiff asserts Fourteenth Amendment due process claims, Eighth Amendment claims related to his conditions of confinement, and claims that defendants violated DOCCS' Directive #4939.  *See generally* Sec. Am. Compl.  Plaintiff seeks monetary damages.  *Id*. at 23.

### C. Analysis

#### 1. Fourteenth Amendment

In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest.  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  As discussed in the June Order, to successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  To establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually

4

created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995); *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

In the June Order, the Court dismissed plaintiff's due process claims reasoning, "[t]he Second Circuit has held that inmates do not have a liberty interest in being free from wearing an exposure jumpsuit. Dkt. No. 7 at 8 (citing *Allah v. Murphy*, 699 Fed. App'x 41 (2d Cir. 2017) (summary order)).

With the second amended complaint, plaintiff reasserts the Fourteenth Amendment claims and alleges that his "liberty" was deprived because he was not able to wear his own belt, shirt, or pants. Sec. Am. Compl. at 14. Plaintiff was also unable to "go[ ] in [his] pockets and us[e] the restroom unless unrestrained." *Id*.

The Court has reviewed the second amended complaint and finds that the allegations do not remedy the pleading deficiencies addressed in the June Order. As noted *supra*, plaintiff was required to wear the jumpsuit for thirty days and the cell shield was in place for three weeks. Plaintiff has not alleged that the jumpsuit restricted his movement or subjected

him to significant hardship in relation to the ordinary incidents of prison life.  Even if an

inmate's movement is restricted, "restrictions of movement and/or access to privileges are

quintessential to the nature of prison life."  *See Smith v. Clary*, No. 12-1779, 2012 WL

4059977, at *2 (D.S.C. Aug. 16, 2012).  Plaintiff does not claim that he was unable to

participate in out of cell activities, programs, or visitation.  *See Barrow*, 2015 WL 417084, at

*18 (finding no deprivation of liberty interest because the defendants did not prevent the

plaintiff from attending programs while he was wearing the jumpsuit).  In *Barrow v. Buren*,

No. 9:12-CV-01268 (MAD/CFH), 2015 WL 417084, (N.D.N.Y. Jan. 30, 2015, this District

Court held:

> [A]lthough [the plaintiff] was embarrassed by the jumpsuit and
> faced verbal harassment when he wore it, defendants were not
> physically restraining or otherwise limiting [the plaintiff's]
> movement. Therefore, [the plaintiff] failed to demonstrate that
> the jumpsuit imposed an "atypical and significant hardship . . .
> in relation to the ordinary incidents of prison life." (citation
> omitted).

*Id*. at *19.

Accordingly, for the reasons set forth herein and in the June Order, plaintiff's

Fourteenth Amendment due process claims are dismissed.  *See Allah v. Hilton*, No. 9:13-CV-

826 (FJS/TWD), 2020 WL 1914965, at *3 (N.D.N.Y. Apr. 20, 2020) (holding that the plaintiff

did not suffer an atypical and significant hardship as a result of being required to wear an

exposer jumpsuit because he was able to participate in out-of-cell activities, including

programs and visitations, while wearing the jumpsuit).

### 2. Eighth Amendment

The Eighth Amendment protects prison inmates from "cruel and unusual punishment"

in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer*, 511 U.S. at 832. To satisfy their obligations under the Eighth Amendment, prison officials must "ensure that inmates receive adequate food, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates." *Id*. To establish an Eighth Amendment conditions of confinement claim, a plaintiff must prove both an objective and a subjective component. *Id*. at 834. To satisfy the objective component, a prisoner must show that the defendant's "act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities." *Id.* Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 at 837.

In the June Order, the Court dismissed plaintiff's Eighth Amendment claims reasoning:

> Plaintiff claims that the exposure suit caused him to choke, "stop[ped] air circulation," and made it difficult for him to

7

breathe. *See* Am. Compl. at 27. Plaintiff also alleges he was subjected to harassment and humiliation. *See id.*

This claim is subject to dismissal. Plaintiff has not plead facts suggesting that the use of the exposure suit deprived him of basic human needs or that the suit restricted plaintiff's movement. *See Abreu v. Lake,* No. 9:17-CV-1312 (DNH/DEP), 2018 WL 11236520, at *25 (N.D.N.Y. Jan. 22, 2018) (citations omitted), *on reconsideration in part  sub nom. Abreu v. Donahue,* 2018 WL 11236521 (N.D.N.Y. Mar. 13, 2018); *see also Barrow v. Buren,* No. 9:12-CV-1268 (MAD/CFH), 2015 WL 417084, at *15 (N.D.N.Y. Jan. 30, 2015) (dismissing Eighth Amendment claim related to verbal harassment as a result of wearing a jumpsuit).

Dkt. No. 7 at 10.

In the second amended complaint, plaintiff realleges that the exposer suit caused choking, cut off his air circulation, and made it difficult for him to breathe. *See generally* Sec. Am. Compl. Plaintiff also claims he was humiliated, embarrassed, ridiculed, slandered, and stressed because he was forced to walk through the facility while wearing the suit. *See id.* at 14.

The Court has reviewed the second amended complaint and finds that plaintiff has failed to remedy the pleading deficiencies identified in the June Order. Plaintiff has not plead that the use of the jumpsuit deprived him of basic human needs. The exposure suit was utilized due to security concerns raised by plaintiff's alleged misconduct and indecent exposure, *see Selby v. Martin*, 84 Fed. App'x 496, 498 (6th Cir. 2003) (finding no Eighth Amendment violation due to the use of leg irons and belly chains that the plaintiff was directed to wear after being found guilty of attempted escape), and expired thirty days after it was issued. The plaintiff does not claim that the jumpsuit restricted his movement, prohibited him from leaving his cell, or precluded him from attending programs or visit. *See Harris v.*

8

*Horel*, No. C 06-7761, 2009 WL 2761339, at *4 (N.D. Cal., Aug. 31, 2009) (finding no Eighth Amendment violation as the exposure jumpsuit did not restrict the plaintiff from leaving his cell, but rather required the plaintiff to wear the jumpsuit when he was outside his cell). Plaintiff has not alleged that the discomfort he experienced as a result of wearing the jumpsuit posed a risk of serious injury.  *See Barrow*, 2015 WL 417084, at *15 (holding that the physical discomfort of the padlock on exposure jumpsuit did not pose an excessive risk of serious injury).  Finally, plaintiff has not specified who humiliated or ridiculed him and even if he had, there is no constitutional right to be free from verbal harassment.  *Id.* (dismissing Eighth Amendment claim that plaintiff was humiliated and shamed by inmates and staff because the defendants forced him to wear an exposure jumpsuit).

Consequently, the Court has no basis to plausibly infer that requiring plaintiff to wear an exposure suit when leaving his cell, for a defined period of time, caused plaintiff to suffer a serious deprivation of a basic human need.  *See Abreu v. Lake*, No. 9:17-CV-1312 (DNH/DEP), 2018 WL 11236520, at *25 (N.D.N.Y. Jan. 22, 2018) (dismissing Eighth Amendment claim based on requiring inmate-plaintiff to wear a jumpsuit whenever he exited his cell because the plaintiff failed to "plead[ ] facts suggesting that the use of the Jumpsuit deprived him of basic human needs or that the Jumpsuit restricted [his] movement, prohibit[ed] him from leaving his cell, or preclude[d] [him] from attending programs or visit"), *upholding dismissal on reconsideration sub nom. Abreu v. Donahue*, 2018 WL 11236521 (N.D.N.Y. Mar. 13, 2018).

As a result, for the reasons set forth herein and in the June Order, the Eighth Amendment claims are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. §

1915A(b)(1).

### 3. Violation of DOCCS Directive

Construing the second amended complaint liberally, plaintiff alleges that defendants did not adhere to the procedures set forth in Directive #4939 related to exposure control.  A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations.  *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . ." ); *Fluent v. Salamanca Indian Lease Auth*., 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).

Failure to follow a DOCCS' Directive does not give rise to a viable § 1983 claim. Accordingly, to the extent that plaintiff attempts to assert a cause of action against any defendant based upon the failure to follow DOCCS' Directive #4939, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014).

III.    **CONCLUSION**

**WHEREFORE**, it is

**ORDERED** that the Clerk of the Court shall amend the docket report in the following respects: (1) add Annucci and Noeth as defendants herein; and (2) terminate Thompson as a defendant herein; and it is further

**ORDERED** that the second amended complaint (Dkt. No. 13) is **DISMISSED without prejudice** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

Dated: October 10, 2023

Glenn T. Suddaby
U.S. District Judge

11